UNITED STATES DISTRICT COURT
DISTRICT COURT OF NEW JERSEY

| | |
|---|---|
| SARAH BRANNON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ATERIAN, INC.<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sarah Brannon, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Aterian, Inc. ("Aterian"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

**PRELIMINARY STATEMENT**

1. Consumer product manufacturers have certain basic rules and procedures that must be followed. When a consumer product manufacturer sells a residential home good product, it has a duty to ensure that the product functions properly and safely for its advertised use and is free from defects. When a consumer product manufacturer discovers a defect, it must explicitly disclose the defect and make it right and abide by its warranties.

2. Plaintiff brings this action on behalf of herself, and all similarly situated persons who purchased handheld clothing steamers manufactured by, or on behalf of Aterian that were

1

subjected to the CPSC Recall 26-250 dated February 5, 2026, concerning a defect with two models of the PurSteam handheld steamers.

3. This action is brought to remedy various violations of law in connection with Aterian's manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Steamers.

4. The Class Steamers have malfunctions that cause the steamers to propel scalding water during normal use exposing users to a burn hazard.

5. In late early February 2026, Aterian recalled nearly 119,000 unites of the PurSteam Mighty Lil Steamer and 75,400 unites of the PurSteam Elite Travel Steamer referenced Class Steamers ("Class Steamers").

6. The Class Steamers were sold online directly by Aterian and through major e-commerce retailers.

7. The allegations herein are based on personal knowledge as to Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

9. Aterian sells household products through a variety of brand names internationally, throughout the United States and within this judicial district. This Court has personal jurisdiction

over the Defendant because the Defendant has its principal place of business in Summit New Jersey.

10. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant sells and distributes their products throughout the United States and within this District.

## PARTIES

11. Sarah Brannon is a citizen of Fredericksburg, VA located in Spotsylvania County. She is a purchaser, owner and user of Aterian's PurSteam Elite Travel Steamer Model PS-510 having a 2303 manufacturing date code.

12. Plaintiff Brannon purchased the steamer online and maintains possession of the steamer.

13. Plaintiff Brannon purchased the steamer for home use and travel.

14. Plaintiff Brannon has experienced her steamer expelling scalding water during normal use.

15. Aterian Inc is a Delaware corporation.  It is also registered to do business in the State of New Jersey with a registered office located in Summit, New Jersey. Aterian's principal place of business is 350 Springfield Ave Suite 200 Summit, New Jersey 07901.  Its Registered Agent is The Corporation Service Company located at 251 Little Falls Drive Wilmington, DE 19808.

16. Aterian is a technology enabled consumer products company that builds and acquires leading e-commerce brands[1].  PurSteam is one of the Defendant's brands.  PurSteam is

---

[1] https://ir.aterian.io/news-releases/news-release-details/aterians-pursteam-and-mueller-living-brands-launch-products (last accessed March 6, 2026).

marketed as a company that provides products of superior quality that it revolutionizes[2] how consumers clean and care for their homes.

17. Aterian is the warrantor and distributor of the Class Steamers in the United States.

## FACTUAL ALLEGATIONS

18. Aterian is the owner and manufacturer of a consumer home products brand called PurSteam.

19. One of the PurSteam line of products is their handheld steamers.

20. In February 2026, there was a CPSC initiated recall for two PurSteam Steamers having Model Numbers PS-510 and PS-550. These steamers are known as the PurSteam Elite Travel Steamer (Model PS-510) and PurSteam Mighty Lil Steamer (Model PS- 550).

21. Both Steamers were manufactured between December 2020 through January 2024. The recalled steamers have date codes of 2310, 2308, 2305, 2303, 2304, 2212, 2210, 2203, 2112, 2210, 2203, 2112, 2111, 2110, 0221, 1019 and 4619.

22. The steamers could be purchased online directly through the manufacturer or through major e-commerce platforms. Such as amazon.com and Walmart.com. It is believed the purchase price for the steamers ranged from $11-$30.

23. The Class Steamers subject to recall have a Nozzle Defect ("Defect") that causes the steamers to expel scalding water during normal ordinary use. During the commercial duration of these steamers for Aterian, there were a combined 94 reports of the defects with over 40 reports of burn injuries for Class Steamers[3].

---

[2] https://ir.aterian.io/news-releases/news-release-details/aterians-pursteam-and-mueller-living-brands-launch-products (last accessed March 6, 2026).

[3] https://www.cpsc.gov/Recalls/2026/Aterian-Recalls-PurSteam-Elite-Travel-Steamers-and-Mighty-Lil-Steamers-Due-to-Risk-of-Serious-Burn-Injury (last accessed March 6, 2026).

24. There were reports of this Defect occurring with the Class Steamers before Aterian acquired the PurSteam line of products in December 2020[4].

25. Plaintiff Sarah Brannon purchased a PurSteam Model PS-510 mini- Steamer (Elite Travel Steamer) online. Her steamer has a date code of 2303.

26. Plaintiff Brannon purchased the steamer for normal home and travel use.

27. Plaintiff Brannon has experienced the steamer expel hot water during its normal use.

28. The CPSC Recall impacts 75,400 unites of the PurSteam Elite Travel Steamer and 119,000 unites of the Mighty Lil Steamers.

## CLASS ACTION ALLEGATIONS

29. Plaintiffs bring this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class (Class Members) are defined as follows:

**All persons in the United States who purchased PurStream Steamers Model PS- 510 and PS- 550 after December 2020.**

30. Plaintiff qualifies as a member of the proposed class.

31. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendants; (iii) an employee of the Court where this action is pending.

32. The proposed class definition may be amended or modified from time to time.

33. The members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily

---

[4] https://www.cpsc.gov/Recalls/2026/Aterian-Recalls-PurSteam-Elite-Travel-Steamers-and-Mighty-Lil-Steamers-Due-to-Risk-of-Serious-Burn-Injury (last accessed March 6, 2026).

identifiable from the information and records in the possession or control of Aterian or its affiliates and agents and from public records.

34. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35. The Proposed Classes are so numerous that the joinder of all members is impracticable.

36. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

37. **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Aterian and obtainable by Plaintiff only through the discovery process. At this time, it is believed that approximately 200,000 products were subject to recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

38. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiffs' claims are typical of the claims of the Class because Plaintiff purchased a Class Steamer that contained the same Nozzle Defect found in all other Class Steamers.

39. **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action

litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

40. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

41. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a. Whether Class Steamers contain the Nozzle Defect;

    b. Whether the Nozzle Defect would be considered material by a reasonable consumer;

    c. Whether the Nozzle Defect would constitute an unreasonable safety risk;

    d. Whether Defendant had a duty to disclose the Nozzle Defect to Plaintiff and other Class Members;

    e. Whether Aterian knew or reasonably should have known of the Nozzle Defect before it sold Class Steamers to Plaintiff and Class Members;

    f. Whether the Nozzle Defect has diminished the value of the Class Steamers;

    g. Whether Aterian breached the implied warranty of merchantability pursuant to state law and/or the UCC;

    h. Whether Aterian breached its express warranties under state law and/or the UCC

    i. Whether Aterian is liable for fraudulent omission;

    j. Whether Aterian was unjustly enriched;

    k. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION
## COUNT I

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

42. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

43. Plaintiff brings this count on behalf of herself and the Class.

44. N.J. Stat. §12A:2-314. provides that, unless excluded or modified, an implied warranty of merchantability exists in a sales contract if the seller is a merchant with respect to goods of that kind. Furthermore, it requires that goods be fit for ordinary purposes and conforming to promises made on the container or label.

45. Aterian is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Steamers.

46. The Class Steamers are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Steamers, as goods, were purchased.

47. Aterian entered into agreements with consumers to sell the Class Steamers to be used by Plaintiff and Class Members for personal use.

48. The implied warranty of merchantability included with the sale of each Class Steamer means that Aterian guaranteed that the Class Steamers would be fit for the ordinary purposes for which home cleaning products are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

49. Aterian breached the implied warranty of merchantability because the Class Steamers are not fit for their ordinary purpose of providing reasonably reliable and safe home cleaning and ironing. After all, Defendants did not indicate that the Class Steamers would contain the Nozzle Defect. This defect will expel hot water exposing the consumers to a burn hazard and physical injury.

50. Given that Plaintiff and Class Members are unable to safely use the Class Steamers without this burn safety risk, the Class Steamers are not fit for their particular purpose of safe home or travel cleaning and ironing.

51. Aterian was put on actual notice of its breach through their review of consumer complaints as well as its own recalls.

52. Had Plaintiff, Class Members, and the consuming public known that the Class Steamers would not be provided with properly functioning steam iron they would not have purchased the Class Steamers or would have paid less for them.

53. As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

54. Plaintiff suffered injury in that she purchased a PurSteam steamer that is worthless. The resale value is now diminished.

## COUNT II
## UNJUST ENRICHMENT

55. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

56. Plaintiff brings this count on behalf of themselves and the Class. This cause of action is plead in the alternative and in equity should the court deem there is no other remedy available for the plaintiff's and that the benefit conferred upon the defendant was unjust.

57. Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Aterian's worthless Class Steamers equipped with a faulty nozzle.

58. Aterian voluntarily accepted and retained this benefit. Aterian had knowledge and appreciation of this benefit, which was conferred upon them by and at the expense of Plaintiff and the Class Members.

59. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Steamers that exposed users to burn hazards, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

60. The circumstances, as described herein, are such that it would be inequitable for Aterian to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

61. Aterian manufactured, marketed, and sold the Class Steamers under the guise of these Steamers being safe and operable, without failure of its nozzle which expelled scalding water during use. Instead, Aterian sold Steamers that had a nozzle that would leak hot water leading to the exposure of a significant burn injury.

62. Because Aterion's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

### COUNT III
### VIOLATION OF THE NEW JERSEY PRODUCTS LIABILITY ACT
### (NJ. Stat. 2A:58C-1 *et seq*)

63. Plaintiff incorporates all previous paragraphs and allegations referenced herein.

64. Plaintiff brings this action on behalf of herself and the class.

65. The nozzle in the Class Steamers Aterian sold under the PurSteam brand suffer from a Nozzle Defect. As reported in the CPSC Recall, the steamer nozzle is capable of overloading leaking hot water and exposing users to a burn hazard.

66. Plaintiff alleges that this defect is manifest when she, and other Class members, are operating the Class Steamers in an ordinary and intended manner.

67. According to the CPSC Recall Notice, there was evidence of this defect prior to its purchase of the PurSteam brand and, yet they continued to sell the product[5].

68. As the designer and manufacturer of the Class Steamers, Aterian had a duty to warn Plaintiff and Class members about the nozzle's defect and the history of known nozzle defects within the Class Steamers and failed to do so.

69. As there is no evidence that this systemic defect is caused by the operators of the Class Steamers, it is apparent that the defect was known, or should have been known, to Aterian at the time the Class Steamers were manufactured.

70. The Defect has proximately caused the Plaintiff's injuries. This defect damages the physical integrity of the Class Steamers and renders them as useless.

**COUNT IV**

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(NJ. Stat. 56: 8-1 *et seq*)**

71. Plaintiff incorporates all previous paragraphs and allegations referenced herein.

72. Plaintiff brings this action on behalf of herself and the class.

---

[5] https://www.cpsc.gov/Recalls/2026/Aterian-Recalls-PurSteam-Elite-Travel-Steamers-and-Mighty-Lil-Steamers-Due-to-Risk-of-Serious-Burn-Injury (last accessed March 6, 2026).

73. Aterian is well aware of the Nozzle Defect. The Recall is for Class Steamers manufactured from December 2020 to present. December 2020 is not an insignificant date as it is date when Aterian acquired and began to operate the PurSteam brand.

74. The CPSC advises that Between December 2020 and January 2024, there were 80 reports of hot water being expelled from the PurSteam Elite Travel Steamer model PS-510, including 14 reports of burn injuries. Between December 2020 and 2024, there were 392 reports of hot water being expelled from the PurSteam Mighty Lil Steamer model PS-550, including 40 reports of burn injuries, two of which were reported as second-degree burns[6].

75. The "math" of these numbers is disturbing. In sum, for the first 38 months of the Defendant's control over the PurStrem brand, on average, there would have been over 2 reported defect per month with about a 42.5% of those reports concerning a burn injury. From a "broader view", the Defendant received 2 complaints per month about the Class Steamers' Nozzle Defect and 1 of those complaints would involve a burn injury. And yet, Aterian continued to sell the Class Steamers.

76. Aterian markets itself with providing safe, reliable and innovative home consumer goods. This would be a misrepresentation as it pertains to the Class Steamers as steam irons with defective nozzles are not a reliable means home cleaning and any steamer whose design exposes users to a burn hazard are not safe.

77. CPSC**'s** awareness of 94 defects by the Class Steamers evidence that Aterian knew or should have known of the defect before selling them to consumers and yet still chose

---

[6] https://www.cpsc.gov/Recalls/2026/Aterian-Recalls-PurSteam-Elite-Travel-Steamers-and-Mighty-Lil-Steamers-Due-to-Risk-of-Serious-Burn-Injury

to do so. Indeed, the Recall notice itself suggests actual knowledge by the Defendant upon purchasing the PurSteam Brand[7].

## COUNT V
### Negligence- Failure to Warn

78. Plaintiff realleges and incorporates by reference all preceding allegations as if fully set forth herein.

79. Defendant Aterian imported, marketed, distributed, and/or sold PurSteam Mighty Lil Steamers and PurSteam Elite Travel Steamers to consumers in the United States.

80. The Steamers can expel hot water from the steam nozzle during use, creating a serious burn hazard to users and bystanders.

81. The CPSC recall announcement reports numerous incident reports and burn injuries associated with these Steamers, including reports of second-degree burns.

82. Injury reports about the Steamers' Nozzle Defect was known to the Defendant prior to its acquisition of PurSteam and its continued sale of the Class Steamers.

83. At all relevant times, Defendant owed Plaintiff and Class members a duty to exercise reasonable care in the design, manufacture, marketing, distribution, and sale of the Steamers, including a duty to provide adequate warnings and instructions about non-obvious hazards associated with the reasonably foreseeable use (and foreseeable misuse) of the Steamers.

84. Defendant also owed a duty to warn of known or knowable risks that posed a foreseeable danger of physical injury, including risks revealed through, among other

---

[7] https://www.cpsc.gov/Recalls/2026/Aterian-Recalls-PurSteam-Elite-Travel-Steamers-and-Mighty-Lil-Steamers-Due-to-Risk-of-Serious-Burn-Injury (last accessed March 6, 2026).

13

things, pre-sale testing, post-market surveillance, consumer complaints, warranty claims, and incident reporting.

85. The burn hazard described above is (a) severe, (b) foreseeable during ordinary consumer use, and (c) not the type of danger that reasonable consumers would necessarily anticipate without adequate warnings and instructions. And, believed to be known to the Defendant prior to its product sale.

86. Defendant breached its duty of reasonable care by, among other things:

   a. Failing to warn consumers, clearly and conspicuously, that the Steamers could expel hot water during use and cause serious burn injuries;

   b. Failing to provide adequate instructions, safeguards, and risk-mitigation directions to reduce the likelihood and severity of hot-water expulsion events (including warnings directed to bystanders and use around exposed skin);

   c. Failing to timely strengthen warnings and instructions after receiving (or being in a position to receive) incident information reflecting the burn hazard;

   d. Continuing to market and sell the Steamers without adequate warnings and instructions despite knowledge (actual or constructive) of the hazard; and/or

   e. Failing to take other reasonable steps a prudent importer/seller would take to warn consumers and prevent foreseeable burn injuries from hot-water expulsion events.

87. Defendant's failures to warn were a substantial factor in causing Plaintiff's injuries and/or damages (and those of Class members). Had Defendant provided adequate warnings and instructions, Plaintiff and Class members would have altered their behavior—by not purchasing the Steamers, discontinuing use, using the product

differently, and/or implementing additional precautions—thereby avoiding or reducing harm.

88. As a direct and proximate result of Defendant's negligent failure to warn, Plaintiff and Class members suffered damages, including but not limited to: personal injury (including burns), pain and suffering, medical expenses, lost wages/time, out-of-pocket losses, and/or economic loss associated with purchasing and possessing a product that presented an undisclosed serious burn hazard and required cessation of use.

89. Plaintiff seeks all available damages and other relief under applicable state law, including compensatory damages, restitution and/or other equitable relief as appropriate, pre- and post-judgment interest, costs, and any other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Class, requests that the Court enter judgment in their favor and against Defendants, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representatives, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: March 6, 2026.

Respectfully Submitted,

*/s/ Joseph Lipari*

Joseph Lipari
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza
Suite 200
Poughkeepsie, NY 12601
Tel: 845-483-7100
Fax: 888-749-7147
Email: liparij@thesultzerlawgroup.com

-AND-

Paul J. Doolittle (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
       cmad@poulinwilley.com

*Attorneys for the Plaintiff and Class*